No. 23-12518-FF

# United States Court of Appeals for the Eleventh Circuit

PRIME PROPERTY & CASUALTY INSURANCE COMPANY,

*Plaintiff-Appellant*,

— v. —

KEPALI GROUP, INC., YORDANI OLIVA RODRIGUEZ, JACQUELINE RONEY, and JACKERLINE ROSE RONEY,

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA IN CASE NO. 9:21-CV-81787

## PRINCIPAL BRIEF OF APPELLANT

James H. Wyman
Ronald L. Kammer
Daniel C. Shatz
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Blvd., 4th Flr.
Coral Gables, Florida 33134
Telephone: (305) 358-7747
Facsimile: (305) 577-1063

*Counsel for Prime Property & Casualty Insurance Company*

*Prime Prop. & Cas. Ins. Co. v. Kepali Group, Inc.*
Case No. 23-12518-FF

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, the following is a list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations, including subsidiaries, conglomerates, affiliates, and parent corporations (including any publicly held corporation that hold more than ten percent of any appellee's stock), with any known interest in the outcome of this appeal.

Brown & Brown of Florida, Inc. (counter-defendant)

Canamero, Jorge D. (trial counsel for appellant)

Dimitrouleas, William P. (district court judge)

Evolution Insurance Brokers, LC (affiliate of appellant)

Graham, Keith A. (counsel for appellees Kepali Group, Inc. and Yordani Oliva Rodriguez)

Greenlight Premium Finance Company (affiliate of appellant)

Hernandez, Pedro E. (trial counsel for appellant)

Hinshaw & Culbertson LLP (counsel for appellant)

Ingram, Lawrence P. (counsel for counter-defendant Brown & Brown of Florida, Inc.)

James Jean-Francois, P.A. (counsel for appellees Jacqueline Roney and Jackerline Rose Roney)

C-1 of 2

*Prime Prop. & Cas. Ins. Co. v. Kepali Group, Inc.*
Case No. 23-12518-FF

Jean-Francois, James G. (counsel for appellees Jacqueline
    Roney and Jackerline Rose Roney)

Kammer, Ronald L. (counsel for appellant)

Keller, Amanda S. (counsel for counter-defendant Brown & Brown
    of Florida, Inc.)

Kepali Group, Inc. (appellee)

Marchena and Graham, P.A. (counsel for appellees Kepali Group,
    Inc. and Yordani Oliva Rodriguez)

Matthewman, William (magistrate judge)

Morris, Norman L. (counter-defendant)

Murphy, Melissa B. (counsel for counter-defendant Brown &
    Brown of Florida, Inc.)

Prime Holdings Insurance Services, Inc. (parent of appellant)

Prime Insurance Company (affiliate of appellant)

Prime Property & Casualty Insurance Company (appellant)

Rodriguez, Yordani Oliva (appellee)

Roney, Jacqueline (appellee)

Roney, Jackerline Rose (appellee)

Shatz, Daniel C. (counsel for appellant)

Wyman, James H. (appellate counsel for appellant)

## STATEMENT REGARDING ORAL ARGUMENT

The appellant believes that oral argument is necessary for proper consideration of this appeal. The district court's ruling that an insurer is obliged to provide automobile liability coverage after the thirty-day grace period in a policy's after-acquired auto provision has expired, and where the insured has never paid the premium for such coverage, raises a variety of issues, the resolution of which would be aided greatly by oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT......................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CONTENTS .............................................................. ii

TABLE OF AUTHORITIES ......................................................... iv

STATEMENT OF JURISDICTION ........................................... 1

STATEMENT OF THE ISSUES ............................................... 1

STATEMENT OF THE CASE ................................................. 2

    A.    Course of proceedings and disposition in the
            district court ................................................................ 2

    B.    Statement of the facts .......................................... 3

            1.    The Prime policy ........................................... 3

            2.    The dealings between Kepali, Brown, and
                 Prime ............................................................ 5

            3.    The present action ....................................... 7

    C.    Standard of review ................................................ 9

SUMMARY OF ARGUMENT .................................................. 10

ARGUMENT ....................................................................... 12

I.    The district court erred in finding that Prime has a
    duty to defend Kepali and Rodriguez. ........................... 12

    A.    Because Prime requested payment of the
            additional premium for the 3985 Toyota, such
            payment was a condition precedent to coverage

continuing beyond the thirty-day notification
period. ................................................................. 12

B.    Even if payment of the premium were a condition
subsequent, Kepali still failed to satisfy the
condition. .......................................................... 15

C.    Given the district court's finding that Brown was
Kepali's agent, Prime cannot be deemed to have
had notice by the end of the thirty-day period of
Kepali's desire to continue coverage. ................................... 20

CONCLUSION ........................................................... 23

CERTIFICATE OF COMPLIANCE ....................................... 25

CERTIFICATE OF SERVICE .............................................. 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Athanason v. Hubbard*, 218 So. 2d 475 (Fla. 2d DCA 1969) .................. 16

*Carr v. State Farm Mut. Ins. Co.*, 278 A.2d 239 (N.J. Super.
    Ct. 1971) .......................................................................... 13

*Christensen v. Mountain W. Farm Bureau Mut. Ins. Co.*, 22
    P.3d 624 (Mont. 2000) ...................................................... 13

*Consumers United Ins. Co. v. Johnson*, 614 P.2d 657 (Wash.
    Ct. App. 1980) .......................................................... 14, 19

*Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839, 1994 U.S. Dist.
    LEXIS 13257 (S.D. Fla. Feb. 1, 1994)............................. 22

*De Cespedes v. Bolanos*, 711 So. 2d 216 (Fla. 3d DCA 1998) .................. 16

*Hicks v. Keebler*, 312 So. 3d 1001 (Fla. 2d DCA 2021)............................ 16

*Indep. Mortg. & Fin., Inc. v. Deater*, 814 So. 2d 1224 (Fla. 3d
    DCA 2002) ........................................................................ 16

*Interstate Fire & Cas. Co. v. Abernathy*, 93 So. 3d 352 (Fla.
    1st DCA 2012)................................................................... 17

*James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th
    1246 (11th Cir. 2022) ......................................................... 1

*Kimbal v. Travelers Ins. Co.*, 10 So. 2d 728 (Fla. 1942)......................... 17

*Melton v. Abston*, 841 F.3d 1207 (11th Cir. 2016)..................................... 9

*Miller v. New Amsterdam Cas. Co.*, 96 S.E. 2d 860 (N.C.
    1957)................................................................................. 14

*Nourachi v. First Am. Title Ins. Co.*, 44 So. 3d 602 (Fla. 5th
    DCA 2010)................................................................... 17, 18

*Rabatie v. U.S. Sec. Ins. Co.*, 581 So. 2d 1327 (Fla. 3d DCA 1990) ........................................................................... 12

*Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329 (Pa. 2007) .............. 13

*Sound City, Inc. v. Kessler*, 316 So. 2d 315 (Fla. 1st DCA 1975) ........................................................................... 16

*Toner v. Travelers Home & Marine Ins. Co.*, 137 A.3d 583 (Pa. Sup. Ct. 2016) ......................................................... 12

## Treatises

12 Ronald A. Anderson, *Couch on Insurance* § 45.196 (2d ed. 1964) ........................................................................... 14

2 Robert A. Lord, *Williston on Contracts* § 6:52 (5th ed. 1993) ............. 21

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). *See James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1253 (11th Cir. 2022) (court of appeals has 28 U.S.C. § 1292(a)(1) jurisdiction over interlocutory order declaring that insurer has duty to defend).

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in finding that an insured who has notified its agent that it desires coverage under a commercial automobile liability insurance policy for a newly acquired vehicle—thereby triggering automatic coverage for the duration of the policy's thirty-day notice period—but who fails to pay the additional premium demanded by the insurer is entitled to coverage for an accident occurring well after the lapse of the notice period.

1

## STATEMENT OF THE CASE

### A.    Course of proceedings and disposition in the district court

The appellant, Prime Property & Casualty Insurance Company ("Prime"), brought this action seeking a declaration that it has no duty to defend or indemnify the appellees Kepali Group, Inc. ("Kepali") and Yordani Rodriguez against the state court claims of the appellees Jacqueline Roney and Jackerline Rose Roney (the "Roneys"). (DE1-2.)[1]

Kepali and Rodriguez counterclaimed against Prime and impleaded Kepali's insurance agents, Brown & Brown of Florida, Inc. and Norman Morris (collectively, "Brown"). (DE74:8-9.) Kepali and Rodriguez sought a declaration that Brown was Prime's agent, and that Prime was bound to provide coverage under the policy it had issued to Kepali. (DE74:12.) Kepali and Rodriguez also brought claims against Prime for reformation, promissory estoppel, breach of fiduciary duty, and negligent misrepresentation. (DE74:13-24.)

Brown and Prime filed motions for summary judgment, while Kepali and Rodriguez filed a motion for partial summary judgment. (DE108; DE120; DE121.) The district court granted Prime's motion in

---

[1] Citations to the record are "DE[docket entry number]:[page number]." Unless otherwise indicated, all emphasis contained within quotations has been supplied by undersigned counsel.

part, and denied the Brown and Kepali/Rodriguez motions in part, finding that Brown was Kepali's agent, not Prime's. (DE184:20.) However, the district court, relying on a policy provision, found that Prime had a duty to defend Kepali and Rodriguez, and granted those defendants' motion in part and denied Prime's motion in part. (DE184:24.)

The court went on to grant summary judgment against Kepali and Rodriguez on their counts for reformation and promissory estoppel. (DE184:25-27.) The district court dismissed their two remaining counts for breach of fiduciary duty and negligent misrepresentation as moot given that it had already determined coverage. (DE184:27-28.) Finally, the district court found that the issue of indemnification was premature given that the underlying action was still pending, and stayed the case pending the resolution of the underlying matter. (DE184:28.)

This appeal follows.

## B.    Statement of the facts

### 1.    The Prime policy

Prime issued a commercial automobile policy ("Policy") to Kepali for the period of January 23, 2019, to January 23, 2020. (DE1-1:2.) The policy contained the following pertinent provision:

**SECTION 1 – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that

may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

| Symbols | Description of Covered Auto Designation Symbols | |
|---|---|---|
| … | … | |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| … | … | |

**B. Owned Autos You Acquire After The Policy Begins**

. . .

**2.** But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

(DE1-1:7-8.) Item Three of the Declarations listed eleven different autos by year, make, and model with their vehicle identification number ("VIN") and the premium charged. (DE1-1:5.)

4

### 2.    The dealings between Kepali, Brown, and Prime

Kepali had a contract with Doctor's Choice Medical Center to provide transportation for Doctor's Choice patients. (DE119-7:11.) Due to her experience as a licensed insurance agent, Vanessa Bringas, an executive administrative assistant for Doctor's Choice, handled the procurement of insurance for both Doctor's Choice and Kepali. (DE119-7:8, 10, 12.) Doctor's Choice had a commercial automobile policy through Progressive Insurance Company, separate from the Policy that Kepali had with Prime. (DE119-7:16-17.) Ana Pereira, an account manager at Brown, Kepali's agent, handled the Kepali and Doctor's Choice accounts for Brown, and would process any change and certificate requests made by Kepali and Doctor's Choice. (DE119-10:15-16, 22-23.)

On September 30, 2019, Kepali acquired a 2009 Toyota Sienna with a VIN ending in 3985 (the "3985 Toyota"). (DE122:3.) On October 3, 2019, Bringas emailed Pereira and requested that two Mercedes be added to the Policy that Kepali had with Prime, and that the 3985 Toyota be added to the policy that Doctor's Choice had with Progressive. (DE119:6.) Pereira sent the change request for the two Mercedes to Prime on the following day. (DE119:6.) For unknown reasons, the change request also asked that a different 2009 Toyota with a VIN

ending in 0079 (the "0079 Toyota") be listed as vehicle #00001 on the Policy instead of vehicle #00002. (DE119:6.)

Prime prepared and sent a quote to Brown that same day. (DE119:6.) Bringas signed the quote and returned it to Prime, which then issued the endorsement for the two Mercedes and the 0079 Toyota. (DE119:7.) Later that day, Bringas requested that Brown add the 3985 Toyota to the Prime Policy instead of the Doctor's Choice policy. (DE119:7.) Brown sent this change request to Prime, but before receiving a quote back from Prime, Brown, in contravention of its agreement with Prime, sent Kepali a certificate of insurance and auto identification cards for the 3985 Toyota. (DE119:8.) Brown never provided the certificate or identification cards to Prime. (DE119:9.)

On October 7, 2019, in response to the change request to add the 3985 Toyota, Prime prepared and sent to Brown a quote in the amount of $2391. (DE119:9.) The email from Prime to which the quote was attached stated: "Endorsement cannot be processed without . . . [s]igned quote, and sufficient payment made payable to 'EIB.' " (DE119-19:2.) On both of its pages, including the last page just below the line for the insured's signature, the quote itself stated: "Premium must be received prior to the Endorsement becoming effective." (DE119-19:3, 4.)

However, Brown never sent the quote to Kepali for signature and payment. (DE119:9.) Thus, Prime never received back a signed copy of the quote. (DE119:9.) Nor did it ever receive payment of the $2391

premium. (DE119:9.) Consequently, Prime never issued an endorsement adding the 3985 Toyota to the Policy. (DE119:9.) The policy period expired on January 23, 2020, with the premium for the 3985 Toyota still unpaid. (DE185:12.)

### 3. The present action

On December 6, 2019—more than two months after it was acquired—the 3985 Toyota, driven by the appellee Rodriguez, was involved in an accident in Palm Beach County, Florida, with a car occupied by the Roneys. The Roneys brought suit against Kepali and Rodriguez for damages suffered in the accident. Prime then brought the present action seeking a declaration that it had no duty to defend or indemnify Kepali and Rodriguez because the 3985 Toyota was never added to the Policy as a covered auto.

Kepali and Rodriguez countersued Prime and impleaded Brown. (DE74:8-9.) Kepali and Rodriguez sought a declaration that Brown was Prime's agent, and that Prime was bound to provide coverage under the Policy, given Brown's representations that the 3985 Toyota had been added. (DE74:12.) Kepali and Rodriguez also brought claims against Prime for reformation, promissory estoppel, breach of fiduciary duty, and negligent misrepresentation. (DE74:13-24.)

Brown and Prime filed motions for summary judgment, while Kepali and Rodriguez filed a motion for partial summary judgment. (DE108; DE120; DE121.) The district court found that Brown was

Kepali's agent, not Prime's. (DE184:17.) However, the district court went on to analyze the after-acquired auto provision in the Policy, which provides that an "auto" is covered under the Policy only if (a) Prime already covers all autos that Kepali owns for that coverage or the auto replaces one Kepali had previously owned that had such coverage, and (b) Kepali notifies Prime within thirty days after acquiring the auto that it wants Prime to cover the auto with that coverage. (DE184:21.)

The district court found that it was undisputed that Kepali insured all of its vehicles under the Policy, and that Kepali had, through its agent Brown, notified Prime of its desire for coverage within thirty days of acquiring the 3985 Toyota. (DE184:22-23.) Consequently, the court declared that Prime had a duty to defend against the claims brought by the Roneys in the underlying action. (DE184:29.)

The district court rejected Prime's arguments that the provision only provides coverage for a thirty-day grace period and that coverage does not extend beyond that period unless a premium is paid. (DE184:22.) The court found that while some after-acquired auto provisions require payment of an additional premium before extending coverage to a newly acquired vehicle, "the provision at issue contains no such requirement." (DE184:23-24.) The district court further observed that this "does not mean that no premium may be charged or that the coverage is free. It only means that, under the plain terms of Section

8

I.B.2 of the Policy, paying the premium was not a condition precedent to continued coverage." (DE184:24.)

The court went on to grant summary judgment against Kepali and Rodriguez on their count for reformation, finding that there was no mutual mistake, and on their count for promissory estoppel, finding that the endorsement for the two Mercedes and the 0079 Toyota contained no representation that the 3985 Toyota had also been added. (DE184:25-27.) The district court dismissed their two remaining counts for breach of fiduciary duty and negligent misrepresentation as moot given that it had already determined there was coverage for the 3985 Toyota. (DE184:27-28.) Finally, the district court found that the issue of indemnification was premature given that the underlying action was still pending, and stayed the case pending the resolution of the underlying matter. (DE184:28.)

## C.   Standard of review

A district court's grant of summary judgment is reviewed *de novo*, considering the facts and drawing all reasonable inferences in the light most favorable to the non-moving party. *E.g.*, *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (citation omitted).

## SUMMARY OF ARGUMENT

The district court erred in finding that payment of the additional premium for the 3985 Toyota was not a condition precedent to continued coverage of the vehicle beyond the after-acquired auto provision's thirty-day notice period. While coverage attaches automatically to a newly acquired vehicle for thirty days under the provision, courts have held that even where notice is given, coverage does not continue beyond the notice period unless the insured remits payment for the additional premium after such payment is requested by the insurer. Here, Kepali did not remit payment despite such payment being requested by Prime.

Even if payment of the premium were considered a condition subsequent to continued coverage, as the district court apparently supposed, Kepali still failed to satisfy the condition. The 3985 Toyota quote flatly informed Kepali that the 3985 Toyota would not be added to the Policy unless the additional premium were paid. While Kepali made payments for its other after-acquired vehicles, it did not do so with respect to the requested premium payment for the 3985 Toyota.

Even if this agreement were left aside, Florida law holds that where a contract is silent as to the time for payment, a reasonable time will be implied. Under the facts and circumstances of the present case, a reasonable time for payment would have to be before the December 6, 2019, date of the accident. Permitting payment after the accident would

10

run afoul of a basic tenet of Florida insurance law, the known loss doctrine, which precludes coverage for losses that have already taken place.

Further, while at least one court outside of Florida has held that an insured has until the expiration of the policy period to make the additional premium payment, Kepali did not even make that extended condition subsequent deadline. Not only did Kepali fail to make payment by the end of the thirty-day grace period or before the accident, it also failed to make payment before the policy expired. In fact, Kepali has *never* made the premium payment. Although the district court stated in its order that its ruling did not mean coverage was free, that is exactly the result of its erroneous ruling.

Finally, the district court erred in imputing to Prime continued knowledge of Kepali's intent to have coverage for the 3985 Toyota even after Kepali failed to pay the requested premium. The district court properly found that Brown was Prime's agent, yet imputed to Prime Brown's knowledge that Kepali desired coverage for the 3985 Toyota. What remained at the end of the thirty-day notice period was only Prime's knowledge that Kepali had neither returned the signed quote for the 3985 Toyota nor made the additional premium payment—which was effectively notice to Prime that Kepali did not wish to have continued coverage for the vehicle.

11

## ARGUMENT

**I.    The district court erred in finding that Prime has a duty to defend Kepali and Rodriguez.**

**A.    Because Prime requested payment of the additional premium for the 3985 Toyota, such payment was a condition precedent to coverage continuing beyond the thirty-day notification period.**

Under Florida law, an after-acquired auto provision in an automobile insurance policy that requires an insured to give the insurer notice of a newly acquired auto within a certain period of time if the insured wishes coverage for the vehicle is deemed a condition subsequent. *Rabatie v. U.S. Sec. Ins. Co.*, 581 So. 2d 1327, 1330 (Fla. 3d DCA 1990) (*en banc*). Accordingly, "under such a provision coverage attaches immediately upon acquisition of the after-acquired vehicle," and the vehicle "is covered during the period in which notice is to be given" *Id.* (citation omitted). This is so even if the vehicle is involved in an accident occurring before the lapse of the notice period, regardless of whether the insured has given notice. *Id.* (citation omitted).

Such a provision "is essentially a contractual grace period, during which the insurer will automatically provide coverage for a newly acquired vehicle for a brief period." *Toner v. Travelers Home & Marine Ins. Co.*, 137 A.3d 583, 588 (Pa. Sup. Ct. 2016). However, in scenarios where this grace period has lapsed without any notice to the insurer of the newly acquired auto, courts have long held that the automatic

12

coverage afforded during the notice period does not exist for an accident occurring after the period's lapse. *E.g.*, *Carr v. State Farm Mut. Ins. Co.*, 278 A.2d 239, 242-43 (N.J. Super. Ct. 1971) (collecting authorities).

Yet the condition of notice to the insurer is not the only one that must be satisfied for coverage to continue past the grace period. While the Policy here states that an after-acquired vehicle is covered "only if" Kepali notifies Prime within thirty days of acquiring the vehicle, Kepali was also required to promptly pay any additional premium due—as evidenced by the quote for the 3985 Toyota and the email communication to which it was attached. The email stated that the endorsement for the vehicle could not be processed without "sufficient payment," (DE119-19:2), while the quote itself unequivocally informed Kepali, through its agent, that the additional "[p]remium must be received prior to the Endorsement becoming effective." (DE119-19:3, 4.)

Courts have found that "if other conditions of 'after acquired vehicle' coverage are met, coverage on newly acquired vehicles attaches at the time of acquisition and continues for the policy period *unless the insured refuses to pay any additional premium which is requested*." *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329, 334 (Pa. 2007) (quoting *Christensen v. Mountain W. Farm Bureau Mut. Ins. Co.*, 22 P.3d 624, 629 (Mont. 2000)).

As one Washington court put it:

13

> The fact that the insurer may charge an additional premium for the extension of the coverage beyond the notice period does not mean that the making of such payment is a condition precedent to coverage during the initial period of automatic coverage. Such a construction of the additional premium clause would destroy the operation of the automatic insurance clause. It must therefore be interpreted according to its exact letter; to have no effect with respect to the initial automatic coverage period, *to be operative only with respect to subsequent coverage and then only after a demand has been made for the payment of an additional premium.*

*Consumers United Ins. Co. v. Johnson*, 614 P.2d 657, 659-60 (Wash. Ct. App. 1980) (quoting 12 Ronald A. Anderson, *Couch on Insurance* § 45.196, at 244 (2d ed. 1964)); *see also Miller v. New Amsterdam Cas. Co.*, 96 S.E. 2d 860, 865 (N.C. 1957) (payment of additional premium for after-acquired auto deemed condition precedent to coverage because "payment of premiums is of the essence of a contract of insurance and is a sine qua non to the successful operation of an insurance company").

The district court thus erred by finding that Kepali's payment of the additional premium was not a condition precedent to continued coverage beyond the grace period. Payment of the additional premium is only deemed not to be a condition precedent to the automatic coverage extended during the thirty-day notice period. Yet where, as here, the insurer has expressly requested payment of the additional

14

premium—informing the insured that the additional premium payment "must be received" for coverage to become effective—such payment is plainly a condition precedent to coverage continuing after the lapse of the grace period.

### B. Even if payment of the premium were a condition subsequent, Kepali still failed to satisfy the condition.

Even assuming the district court were correct, and payment of the additional premium is not a condition precedent to coverage continuing beyond the grace period, that conclusion merely begs the question: when must payment of the additional premium be made?

Although the district court noted that nothing in the after-acquired auto provision required payment of an additional premium before coverage is extended to a newly acquired vehicle, Kepali, through its agent Brown, was nevertheless notified that payment for the additional premium of $2391 "must be received" for the endorsement to be effective. Prime did not receive payment of the additional premium, and therefore the automatic coverage afforded by the after-acquired auto provision lapsed when the provision's thirty-day notice period expired.

Even if Kepali's failure to pay the premium upon receipt of the quote were disregarded, the automatic coverage under the after-acquired auto provision still could not have continued on through the

date of the accident. It is well established that where a contract does not set forth a time for payment, "the law will imply a reasonable time." *De Cespedes v. Bolanos*, 711 So. 2d 216, 218 (Fla. 3d DCA 1998); *see also Indep. Mortg. & Fin., Inc. v. Deater*, 814 So. 2d 1224, 1225 (Fla. 3d DCA 2002) ("Simply because a contract is unclear as to when payment must be made does not relieve a party of an obligation to make payment. Where an agreement does not specify the time for payment or provides for an indeterminate or indefinite time, the law implies that payment will be made within a reasonable time.")

The factors to be considered when determining what constitutes a reasonable time for performance under a contract "include the contract's subject matter, the parties' situation, the parties' intentions, and the circumstances of performance." *Hicks v. Keebler*, 312 So. 3d 1001, 1005 (Fla. 2d DCA 2021) (citing *Sound City, Inc. v. Kessler*, 316 So. 2d 315, 317 (Fla. 1st DCA 1975)); *see also Athanason v. Hubbard*, 218 So. 2d 475, 477 (Fla. 2d DCA 1969) ("The question as to what constitutes a reasonable time must be determined from all the surrounding facts and circumstances in each case.").

Here, the parties' course of conduct reveal that when Kepali requested that additional automobiles be added to the Policy, Kepali would make the additional premium payment on the same day that the quote was received. (DE119:6-7; DE131.) While this does not necessarily mean that a reasonable time for payment of additional premiums under

16

the facts and circumstances here is payment on the same day, it does indicate an awareness that time is of the essence, if not an imputed awareness that, under Florida law, the automatic coverage afforded by the after-acquired auto provision can only be definitively said to last until the end of the provision's thirty-day notice period. *See Kimbal v. Travelers Ins. Co.*, 10 So. 2d 728, 730 (Fla. 1942) ("[T]he parties [to a contract of insurance] are charged, by law, with a knowledge of its legal effect and operation."). In fact, Kepali's corporate representative admitted in an affidavit that because the 3985 Toyota was not listed on the endorsement for the two Mercedes, it was "operating that vehicle without insurance." (DE122:11.)

What can be said with particular authority is that payment after the thirty-day notice period has expired *and* after an accident involving the newly acquired vehicle is unreasonable as a matter of law. "Florida's insurance laws embody the fortuity and known loss principles, precluding coverage for losses that have already taken place." *Interstate Fire & Cas. Co. v. Abernathy*, 93 So. 3d 352, 358 (Fla. 1st DCA 2012). The "fortuity" principle or "known loss doctrine" is "one of the most basic insurance law principles." *Nourachi v. First Am. Title Ins. Co.*, 44 So. 3d 602, 609 (Fla. 5th DCA 2010) (Lawson, J., concurring). As has been explained:

17

> Essentially, the doctrine provides that one may not obtain insurance for a loss that either has already taken place or is in progress. . . .
>
> This basic doctrine [arises] from a recognition that the insured's risk is, in a real sense, borne by the insurer's policyholders as a group, from whose pool of premiums all claims must be paid if the insurer is to remain in business. In other words, because society as a whole relies on insurance, public policy will not permit a transaction that is anathema to the very concept of insurance which, if allowed in the aggregate, could put insurance at risk for all.

*Id.* (citations and internal quotation marks omitted).

Thus, under the known loss doctrine, an insured who has indicated to the insurer that it desires coverage for a newly acquired vehicle should not be permitted to "wait and see" if the vehicle is involved in an accident before paying the premium for that coverage. To hold otherwise would only encourage insureds who have sought to add coverage for newly acquired vehicles simply to withhold the payment of the additional premium, and only make such payment if the vehicle is involved in an accident. And even then, under the district court's ruling, the insured would *still* not be required to make payment to be entitled to coverage.

Payment of the additional premium therefore cannot be the sort of open-ended condition subsequent envisioned by the district court.

Under Florida law, Kepali was required to pay the additional premium within a reasonable time, which would certainly be prior to the December 6, 2019, date of the accident. While there is authority from outside of Florida holding that where a policy has no specific date for payment, "the additional premium [i]s payable at any time before the end of the policy period," *Consumers United Ins. Co. v. Johnson*, 614 P.2d 657, 660 (Wash. Ct. App. 1980), Kepali fails even by that metric.

Kepali did not return the signed quote and payment on the date of receipt, as was the usual course of conduct between the parties when a vehicle was added to the Policy. Kepali did not make payment by the expiration of the thirty-day grace period. Kepali did not make payment by or even at the time of the December 6, 2019, accident. And Kepali did not make payment by the January 23, 2020, expiration of the policy period.

In fact, Kepali has *never* paid the additional premium for the 3985 Toyota, not when this lawsuit was filed, not when it moved for summary judgment, and not even when the district court ruled in Kepali's favor finding a duty to defend. The district court's order is thus all the more astonishing when considering that no court has ever found that an insured is entitled to coverage despite never having paid the premium for such coverage. Although the district court stated in its order that its ruling does not mean "that the coverage is free," that is precisely the result here, even if unintended. That result effectively

19

giving Kepali free coverage stems from an upending of a fundamental principle of Florida insurance law and well-established principles of contractual interpretation. The district court's order must therefore be reversed.

### C. Given the district court's finding that Brown was Kepali's agent, Prime cannot be deemed to have had notice by the end of the thirty-day period of Kepali's desire to continue coverage.

The district court also erred in establishing the major premise of its duty-to-defend ruling, i.e., finding that Kepali told Prime within thirty days after acquiring the 3985 vehicle that Kepali wanted Prime to cover the vehicle. This finding is flatly inconsistent with the district court's otherwise correct finding that Brown was Kepali's agent, and not Prime's.

On October 4, 2019, Brown informed Prime that Kepali wanted to add two Mercedes to the Policy. Prime responded with a quote, requesting a premium payment of $2457 for the issuance of an endorsement for the two vehicles. Brown then informed Kepali of the quote for adding the two Mercedes to the Policy. Later on that same day, Brown told Prime that Kepali also wanted to add the 3985 Toyota to the Policy. Prime responded with a quote requesting a premium payment of $2391 for the issuance of an endorsement for the 3985 Toyota.

While Kepali promptly signed the quote for the two Mercedes and made the premium payment of $2457, it did not sign the quote or make the premium payment for the 3985 Toyota. This is because Brown failed to send the 3985 Toyota quote to Kepali. In fact, Brown incorrectly—and contrary to its authority from Prime—told Kepali that Prime had agreed to issue the endorsement even without payment of the premium, and sent Kepali a certificate of insurance and auto identification cards for the 3985 Toyota.

Prime knew none of this. Having not received the signed quote for the 3985 Toyota or the additional premium payment, Prime could only conclude that Kepali was not interested in accepting the quote to add the 3985 Toyota, and had perhaps decided to go with its initial plan of adding the vehicle to the Progressive policy of Doctor's Choice. This had the effect of nullifying or withdrawing Kepali's original notice to Prime through Brown during the thirty-day notification period, given that it indicated Kepali did *not* desire to add the 3985 Toyota to the Policy.

Additionally, the quote for the 3985 Toyota was an offer made by Prime to Kepali through Brown, and was akin to an offer made to an offeree who inexplicably remains silent; whatever the reason might be for the silence is beside the point because "no contract can be made unless the offer stated that the offeror would assume assent in the case the offeree did not reply." *Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839,

1994 U.S. Dist. LEXIS 13257, at *79 (S.D. Fla. Feb. 1, 1994) (quoting 2 Robert A. Lord, *Williston on Contracts* § 6:52 (5th ed. 1993)).

Further, as the district court noted in its order, both Brown and Kepali argued below that Brown's knowledge should be imputed to Prime on the basis that Brown was Prime's agent. (DE184:14.) But the district court declined to do so, instead finding that neither Brown nor Kepali had set forth evidence that Brown was Prime's agent, and that Brown was "at most an insurance broker and agent of Kepali for purposes of seeking coverage for the 3985 Toyota." (DE184:17-18.)

This finding cannot be reconciled with the district court's linchpin finding that Prime was imputed with Brown's notice that Kepali still sought coverage for the 3985 Toyota, despite having neither returned the signed quote for the 3985 Toyota nor made the additional premium payment. Further, based on the district court's own finding regarding the agency relationships between the parties, Prime cannot be charged with notice of Brown's failure to send the quote to add the 3985 Toyota to Kepali or that Kepali intended to insure the 3985 Toyota with Prime.

Kepali—the "you" in the after-acquired auto provision—never told Prime—the "us" in the provision—that it wanted to insure the 3985 Toyota. Kepali only told Brown. Yet because Brown was not Prime's agent, Kepali never told Prime to insure the 3985 Toyota during the provision's thirty-day notice period. Consequently, the automatic

22

coverage afforded by the after-acquired auto provision ceased at the end of that thirty-day period.

The upshot of the inconsistency between the district court's findings is that Brown has emerged scot-free from this litigation, despite its undisputed failure to send the 3985 Toyota quote to Kepali for signature and payment of the additional premium. Prime is instead being held liable for Brown's omissions—despite having no knowledge of those omissions, and despite the district court correctly finding that Brown was Kepali's agent, and not Prime's. Whatever remedy Kepali has is against its agent, Brown, not Prime.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order to the extent it found that Prime has a duty to defend Kepali and Rodriguez.

Respectfully submitted,

*s/James H. Wyman*
James H. Wyman
Florida Bar No. 117692
Ronald L. Kammer
Florida Bar No. 360589
Daniel C. Shatz
Florida Bar No. 94696
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Blvd., 4th Flr.
Coral Gables, Florida 33134
Telephone: (305) 358-7747
Facsimile: (305) 577-1063

*Counsel for Plaintiff-Appellant*
*Prime Property & Casualty*
*Insurance Company*

24

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5043 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Civil Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook type.

*s/James H. Wyman*
James H. Wyman

## CERTIFICATE OF SERVICE

I certify that on January 26, 2023, the foregoing brief was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to Keith A. Graham, Esq., Marchena and Graham, P.A., 976 Lake Baldwin Lane, Ste. 101, Orlando, FL 32814; Lawrence P. Ingram, Esq., Porter Wright Morris & Arthur LLP, 201 N. Franklin St., Ste. 1600, Tampa, FL 33602; and James G. Jean-Francois, Esq., James Jean-Francois, P.A., 6100 Hollywood Boulevard, Ste. 211-A, Hollywood, FL 33024.

*s/James H. Wyman*
James H. Wyman